IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JASON RUMSEY, #M44081,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:25-cv-00869-MAB |
| | ) |
| **IDOC, LATOYA HUGHES,** | ) |
| **WEXFORD HEALTH SOURCES, INC.,** | ) |
| **JEFF WEHKING, CHRISTINE VINYARD,** | ) |
| **DANIEL MONTI, ARVINDER ARORA,** | ) |
| **PERCY MYERS, JANA REUTER,** | ) |
| **and HEATHER GALLION,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Jason Rumsey, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Centralia Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights (Doc. 1). He asserts claims including deliberate indifference to his painful medical condition, retaliation, and negligence (Doc. 1, p. 6).

The Complaint (Doc. 1) is now before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out non-meritorious claims.[1] 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally

---

[1] The Court has jurisdiction to screen the Complaint based on Plaintiff's consent to the full jurisdiction of a magistrate judge, and the limited consent by the Illinois Department of Corrections /Wexford Health Sources, Inc., to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the IDOC/Wexford.

1

frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## THE COMPLAINT

A review of the Complaint reveals the following allegations: In late May 2024, Plaintiff developed an ingrown toenail on the big toe of his right foot, which became inflamed and started to hurt (Doc. 1, p. 7). He submitted a nurse sick call ("NSC") request. On June 9, 2024, he was seen at NSC; his toe was swollen, painful, and infected. The nurse gave him no treatment and told him he must go through NSC again before he would be referred to a doctor. Plaintiff believes it is a practice of Defendant Wexford Health Sources, Inc. ("Wexford") to require inmates to attend NSC twice before they may see a doctor. This delay caused Plaintiff to endure unnecessary pain and suffering while his toe condition became worse.

Plaintiff made more NSC requests including complaints that his condition impaired his ability to walk. On July 10, 2024, a nurse practitioner ("N.P.") prescribed ibuprofen and Bactrim D.S. to treat the toe infection. The Bactrim caused an adverse reaction, so on July 15, 2024, the N.P. switched Plaintiff's medication to Keflex (Doc. 1, p. 8).

On July 24, 2024, Plaintiff saw Defendant Dr. Arora, who was assisted by Defendant Nurse Reuter (Doc. 1, p. 8). They ordered Plaintiff to be given nightly soaks in hot water for the swollen/infected toe, in the Healthcare Unit. Plaintiff alleges the treatment was inappropriate because it required him to walk a long distance on the painful toe. Arora and Reuter did not address his pain.

On July 31, 2024, Dr. Arora re-ordered Keflex for another serious toe infection. Dr. Arora ordered triple antibiotic ointment for the toe on August 8, 2024. Prior to this, Plaintiff was admitted to the infirmary for a different medical issue (broken wrist).

On September 10, 2024, Plaintiff saw Defendant Dr. Myers for the toe, which was swollen, inflamed, infected, and very painful and sensitive (Doc. 1, p. 8). Plaintiff asked to be scheduled to have the ingrown toenail removed, but Dr. Myers refused to do the procedure or refer Plaintiff to an outside provider. Dr. Arora was also present. Neither doctor did anything to address Plaintiff's pain (Doc. 1, pp. 8-9). The next day (September 11, 2024), Plaintiff again saw Dr. Arora. She told him that Dr. Meyers would have to be the one to either remove the toenail or make the referral for Plaintiff to see an outside provider for its removal. Plaintiff states that at this point, the infection had persisted since at least June 9, 2024 (Doc. 1, p. 9).

According to Plaintiff, he learned from Dr. Arora that Dr. Meyers would not remove the toenail and declined to refer Plaintiff to an outside prover for removal of the nail (Doc. 1., p. 9). Then, on September 15, 2024, Plaintiff contends that his toe again became infected and nurses on two shifts attempted to clean and treat the toe and ultimately referred him to a doctor. The next day, the toe was oozing with a bloody discharge. Defendant Reuter responded to clean the wound. Plaintiff requested a different nurse because he had past issues with Reuter. However, Reuter told him if he did not accept treatment from her, it would be considered as "refusing treatment." Defendant Reuter then made plaintiff take the "unnecessary step" of changing into his prison blues even though he was in the infirmary, where sweatpants were allowed,

3

before she would treat him (Doc. 1, p. 10). Plaintiff changed, which caused him pain, frustration, and duress. Reuter cleaned the wound and intentionally squeezed the infected toe to inflict pain. During Plaintiff's stay in the infirmary, many nurses gave him the "cold shoulder" and negative attitudes, which he contends is retaliation for his official complaints.

On September 23, 2024, Plaintiff requested Defendant Nurse Gallion, who was passing out his antibiotics, to give him the medication with a meal because taking them caused burning in his stomach (Doc. 1, p. 11). Medications are distributed in the infirmary at 8:00 a.m. and 8:00 p.m. Gallion responded with hostility, telling Plaintiff if he did not take his medication, she would write it down as a "refusal." Plaintiff sought help from Defendant Vinyard (Healthcare Unit Administrator), who reiterated the infirmary rule that medications would be given only at 8:00 a.m. and 8:00 p.m. and suggested he eat his commissary when he took his medications (Doc. 1, pp. 11-12). Vinyard did nothing about the "burning pain" in Plaintiff's stomach, referring Plaintiff to Gallion (the infirmary nurse).

On September 27, 2024, Wexford Regional Director Babich removed Plaintiff's ingrown toenail. Over the next week, Plaintiff saw Dr. Arora for follow up and complained he still had shooting and burning pain in the toe daily. Dr. Arora did nothing about this problem (Doc. 1, p. 12).

On October 15, 2024, Plaintiff saw an outside podiatrist who opined that the shooting/burning pain could be caused by nerve damage due to the delayed treatment, or by a piece of toenail remaining in the toe. The podiatrist ordered a two-week course of

4

Gabapentin for pain, before he would be willing to cut into Plaintiff's toe to search for pieces of toenail. Plaintiff returned to prison, where Dr. Arora signed off to approve this plan (Doc. 1, pp. 12-13). But when Plaintiff saw Dr. Arora for follow up the next day, Dr. Arora said the Gabapentin should not have been prescribed and cancelled that medication. Plaintiff reported the cancellation to Vinyard, who "took unknown steps to keep care in place for Plaintiff." (Doc. 1, p. 14).

On February 13, 2025, Plaintiff was given antibiotics again for a toe infection. He still has issues with burning and shooting pain in the toe.

Plaintiff asserts that under Wexford practice/policy, a refusal of treatment means a prisoner must start the NSC process over again before obtaining medical attention. Wexford and IDOC also refuse to enact safeguards for prisoners to avoid biased or problematic providers (Doc. 1, pp. 10, 12).

Plaintiff believes Defendants Vinyard and former Warden Monti were aware of Wexford's failure to meet their contractual obligations to provide medical care but failed to take action to correct Wexford's delays in giving care. IDOC and Wexford's unreasonable delays in caring for Plaintiff's toe condition prolonged his pain and suffering and caused him mental and emotional trauma (Doc. 1, p. 14).

Plaintiff seeks monetary damages and injunctive relief to reform IDOC's and Wexford's policies/practices (Doc. 1, p. 16).

## DISCUSSION

Based on the allegations in the Complaint and Plaintiff's identification of his claims (Doc. 1, p. 6), the Court designates the following claims in this *pro se* action:

> **Count 1:** First Amendment retaliation claim against Defendant Reuter.
>
> **Count 2:** Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Vinyard, Arora, Myers, Reuter, and Gallion, for unreasonably delaying and denying treatment of Plaintiff's painful infected ingrown toenail.
>
> **Count 3:** Eighth Amendment (*Monell*) deliberate indifference to serious medical needs claim against Defendants Wexford Health Sources, Inc., and the Illinois Department of Corrections for maintaining policies, practices and/or procedures that caused unreasonable delays in treating Plaintiff's painful infected ingrown toenail.
>
> **Count 4:** State law medical negligence claim against Defendants Vinyard, Arora, Myers, Reuter, and Gallion for unreasonably delaying and denying treatment of Plaintiff's painful infected ingrown toenail.
>
> **Count 5:** State law negligence claim against Defendants Vinyard, Arora, Myers, Reuter, and Gallion for unreasonably delaying and denying treatment of Plaintiff's painful infected ingrown toenail.
>
> **Count 6:** State law claim for intentional, negligent, reckless, and/or outrageous infliction of emotional distress.
>
> **Count 7:** Breach of contract claim as a third-party beneficiary, against Wexford, IDOC, Vinyard, and former Warden Daniel Monti.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading**

**standard**.[2]

### Preliminary Dismissals

Plaintiff includes Defendant Centralia Warden Jeffrey Wehking "for discovery only at this juncture" and does not articulate any claim against him (Doc. 1, p. 2). Plaintiff may obtain discovery from any other defendant for the claims that survive merits screening, thus it is not necessary to include Wehking for this purpose. Wehking will be dismissed as a defendant without prejudice.

### Count 1

Prison officials may not retaliate against inmates for exercising their First Amendment rights to file grievances, lawsuits, or otherwise complain about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted). The plaintiff must have experienced an adverse action that would likely deter him from engaging in the First Amendment activity in the future. *See McKinley v. Schoenbeck*, 731 F. App'x 511, 515 (7th Cir. 2018) (quoting *Surita v. Hyde*, 665 F.3d 860, 878-79 (7th Cir. 2011)); *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009).

Here, Plaintiff alleges generally that he "had issues with" Defendant Reuter in the past but does not explain those "issues" or identify any complaints he may have lodged

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

7

about her. He states Reuter acted in a "retaliatory manner" when she required him to change clothes before she treated his toe wound; claims she pressed on his toe with the intent to cause him pain, not to expel the infection; and told him to "stop being a baby" when he complained (Doc. 1, p. 10). These allegations are insufficient to support a retaliation claim against Reuter. Plaintiff does not identify his First Amendment activity that triggered the alleged retaliation, and he did not suffer an adverse action likely to deter future protected activity. Count 1 will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Count 2**

Prison medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* Deliberate indifference is demonstrated where a prison official acted or failed to act despite his/her knowledge of a serious risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). The failure to treat pain may amount to an Eighth Amendment violation. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Notably, medical negligence or even malpractice does not violate the Constitution. *Estelle*, 429 U.S. at 106; *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001).

8

Plaintiff's allegations about a lengthy and painful infected ingrown toenail amount to an objectively serious medical condition. The Court next turns to each defendant's individual interactions with Plaintiff. The hot water soaks ordered by Dr. Arora and Reuter do not amount to deliberate indifference, despite Plaintiff's objection that he was required to walk too far for this treatment. The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Plaintiff claims Reuter did not give him anything for his pain on July 24, 2024, when the water soaks were ordered. However, no deliberate indifference is apparent for the September 16, 2024 interaction when Reuter gave necessary treatment to clean Plaintiff's infected toe wound. Accordingly, Count 2 may proceed against Reuter only for the July 24, 2024 alleged failure to provide pain treatment.

Plaintiff's infected toenail was not removed until September 27, 2024, two months after he first saw Dr. Arora. Dr. Arora prescribed toe soaks and antibiotics during this time but allegedly gave him nothing for the pain. The Complaint is unclear on whether Dr. Arora had authority to make a referral or perform the toenail removal herself, but it is plausible that she contributed to the delay in surgical treatment. Plaintiff claims Dr. Arora also failed to treat his pain following the toenail removal and attempted to cancel the Gabapentin prescribed by the podiatrist. Plaintiff indicates he nonetheless received the Gabapentin when Vinyard kept that "care in place." These allegations are sufficient to state an Eighth Amendment claim against Dr. Arora for her alleged failure to treat

9

Plaintiff's pain from July 24, 2024 through October 15, 2024 when he received the Gabapentin, and for the delayed surgery from July 24, 2024 to September 27, 2024.

On September 10, 2024, Dr. Myers allegedly refused to remove Plaintiff's infected toenail or to refer him to another provider for this treatment. More than three weeks passed before the toenail was removed, and Plaintiff claims Dr. Myers failed to give him any pain treatment during that time. Accordingly, Plaintiff may proceed with his deliberate indifference claim against Dr. Myers for the pain and delayed surgery between September 10, 2024 and September 27, 2024.

Plaintiff's disagreement with Gallion's and Vinyard's schedule for distributing his medications in the infirmary does not rise to the level of deliberate indifference. Plaintiff cannot dictate the medication or meal schedule, and he had the option of eating a commissary snack to mitigate his stomach discomfort. Defendants Gallion and Vinyard will be dismissed from Count 2.

In summary, Count 2 will proceed only against Defendants Arora, Myers, and Reuter as described above.

**Count 3**

Defendant Wexford Health Sources, Inc. ("Wexford") is a corporation contracted by the IDOC to provide medical staff and treatment at Centralia during the time Plaintiff's claims arose, but it cannot be held liable solely on that basis. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference if it had

10

a policy or practice that caused the violation). *See also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Plaintiff invokes *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978), alleging the Wexford policy, custom, or practice of requiring a prisoner to go through the NSC process twice before being allowed to see a doctor unnecessarily delayed his treatment and prolonged his pain and suffering from the infected toe. This is sufficient to proceed with the deliberate indifference claim against Wexford in Count 3.

Plaintiff also takes issue with the Wexford practice/policy that a prisoner must accept the proposed treatment (and provider) or have the encounter documented as a "refusal" which would cause further delay. This alleged practice does not amount to deliberate indifference. A plaintiff cannot claim a constitutional violation where he makes the choice to decline treatment or refuses to be treated by a particular provider. Prisoners do not have a constitutional right to specific medical treatment. *See Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

Plaintiff cannot proceed with a *Monell* policy/practice claim against the IDOC or Director Latoya Hughes. A *Monell* claim may only be brought against a municipal entity, not a state agency such as the IDOC. *See Monell*, 436 U.S. at 690. Defendants IDOC and Hughes will be dismissed from the action.

Count 3 will proceed against Wexford only on the claim for delay due to the Nurse Sick Call procedure. The Court further notes that because Wexford is no longer the contracted medical provider for the IDOC, any request for prospective injunctive relief

11

related to Wexford's former policies or practices is now moot. *See Olson v. Brown*, 594 F.3d 577, 580 (7th Cir. 2010) (quoting *United States Parole Commission v. Geraghty,* 445 U.S. 388, 396 (1980)).

### Counts 4 and 5

Plaintiff's claims for medical negligence in Count 4 and negligence in Count 5 derive from the same facts as his federal constitutional claims in Count 2. Because Count 2 will proceed against Defendants Arora, Myers, and Reuter, the state law medical negligence and negligence claims will also proceed against Arora, Myers, and Reuter for the conduct described in the Complaint. *See* 28 U.S.C. § 1367(a).

To state a claim for negligence in Illinois, a complaint must allege facts to establish that the defendant owed the plaintiff a duty of care, breached that duty, and that the breach was the proximate cause of the plaintiff's injury. *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011) (citing *Iseberg v. Gross*, 879 N.E.2d 278 (2007)). Plaintiff's Complaint is devoid of such allegations regarding Defendants Gallion and Vinyard, thus they will be dismissed from Counts 4 and 5.

To ultimately pursue the state law claims against Arora, Myers, and Reuter, before the completion of the summary judgment phase of the case, Plaintiff will need to procure an affidavit stating that "there is a reasonable and meritorious cause" for litigation against these Defendants and a physician's report to support the assertions in the affidavit, pursuant to 735 ILCS § 5/2-622. *See Young v. United States*, 942 F.3d 349 (7th Cir. 2019).

**Count 6**

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that the defendant(s) intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Somberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988).

Plaintiff does not associate specific individual defendants with this claim (Doc. 1, p.6). He claims Reuter intentionally inflicted "frustration and duress" on him in the course of treating his wound on September 16, 2024 (Doc. 1, p. 10). This alleged conduct does not rise to the level of truly "extreme and outrageous," nor does Plaintiff describe suffering emotional distress of a severity to support an emotional distress claim against Reuter.

Plaintiff also states the delay in medical care caused by the IDOC and Wexford caused him "mental and emotional traumatization…damaging his self image, self worth, and mental and emotional state." (Doc. 1, p. 14). This claim also fails. None of the individual IDOC or Wexford medical providers who treated Plaintiff engaged in alleged conduct meeting the "extreme and outrageous" standard. Nor does the Complaint satisfy the other elements of the claim. Count 6 will therefore be dismissed without prejudice for

failure to state a claim upon which relief may be granted.

### Count 7

Plaintiff's claim for breach of contract as a third-party beneficiary appears to rest on an alleged breach by Wexford of its contract to provide medical services to IDOC inmates. However, inmates are not intended to be third party beneficiaries to this contract. *See Walker v. Wexford Health Sources, Inc.*, No. 24-cv-1140-MAB, 2025 WL 2418444, at *3 (S.D. Ill. Aug. 21, 2025). "Under Illinois law, a person is considered a third party beneficiary only when the benefit to him is intended." *Golden v. Barenborg*, 53 F.3d 866, 870 (7th Cir. 1995). A third party has no right of recovery arising from the contract when the benefit to him is merely incidental. *Id.* Illinois district courts have consistently held that inmates cannot sue for breach of the Wexford-IDOC contract because they are not intended to be third-party beneficiaries of that contract. *See, e.g., Bakaturski v. Pittman*, No. 21-cv-14-GCS, 2023 WL 3626431 at *6 (S.D. Ill. May 24, 2023); *Johnson v. Shah*, No. 15-cv-344-SMY-RJD, 2018 WL 724427 at *8 (S.D. Ill. Feb. 6, 2018); *Knuth v. Wexford Health Sources, Inc.*, No. 15-C-2666, 2016 WL 11688081 at *4 (N.D. Ill. Jan. 22, 2016); *Flournoy v. Ghosh*, No. 07-C-5297, 2010 WL 1710807 at *3 (N.D. Ill. Apr. 27, 2010). Accordingly, Count 7 will be dismissed from the action with prejudice for failure to state a claim upon which relief may be granted. Defendant Monti will be dismissed from the action without prejudice.

### OFFICIAL CAPACITY CLAIMS

Plaintiff raises claims against the individual defendants in their individual and official capacities (Doc. 1, p. 3). However, claims for monetary damages may only be pursued against state officials in their individual capacities. *Brown v. Budz*, 904 F.3d 904,

918 (7th Cir. 2005); *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987). Accordingly, the official capacity claims against the individual defendants are dismissed without prejudice.

### PENDING MOTIONS

Plaintiff's Motion for Service of Process at Government Expense (Doc. 4) is **GRANTED.** Service will be ordered below on those Defendants that remain in the action.

### DISPOSITION

The Complaint states colorable claims in Count 2 against Defendants Arora, Myers, and Reuter; in Count 3 against Wexford Health Sources, Inc.; and in Counts 4 and 5 against Arora, Myers, and Reuter. Counts 1 and 6 are **DISMISSED** from the action without prejudice and Count 7 is **DISMISSED** from the action **with prejudice**. Defendants Illinois Department of Corrections, Latoya Hughes, Jeff Wehking, Christine Vinyard, Daniel Monti, and Heather Gallion are **DISMISSED** from the action without prejudice.

The Clerk shall prepare for Wexford Health Sources, Inc., Arvinder Arora, Percy Myers, and Jana Reuter: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal

service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs.

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health

16

Insurance Portability and Accountability Act.

    **IT IS SO ORDERED.**

    **DATED: November 13, 2025**

                                               **/s/ Mark A. Beatty**
                                               **MARK A. BEATTY**
                                               **United States Magistrate Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least 60 days from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take 90 days or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.